# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |
|---|---|
| SIERRA CLUB,<br><br>　　Petitioner,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and ROBERT PERCIASEPE, Acting Administrator, United States Environmental Protection Agency,<br><br>　　Respondents. | Nos. 12-3169, 12-3182, and 12-3240 |

## PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENTS' RENEWED MOTION TO HOLD CASES IN ABEYANCE

Petitioner, Sierra Club, respectfully submits this response to Respondents' Motion to Continue to Hold Cases in Abeyance and to Defer Setting a Briefing Schedule. For the reasons set forth herein, Respondents' motion is not well taken and a stay in this case would prejudice Petitioner and its members.

These consolidated cases seek review of the Environmental Protection Agency's (EPA) decision to redesignate the Cincinnati-Hamilton area from non-attainment with the 1997 annual National Ambient Air Quality Standard (NAAQS) for particulate matter 2.5 microns in diameter and smaller ($PM_{2.5}$) to attainment.  76 Fed. Reg. 77,903 (Dec. 15, 2011) (Kentucky portion); 76 Fed. Reg. 80,253 (Dec. 23, 2011) (Ohio and Indiana portions).  At bottom, this case is necessary because EPA's actions lifted pollution control requirements that would have otherwise reduced harmful air pollution emissions in an area already suffering from poor air quality.

EPA first attempted to control fine particles, known as $PM_{2.5}$, in 1997 by establishing an annual NAAQS of 15 microns per cubic meter of air ($\mu g/m^3$).  But compliance with that standard, alone, cannot eliminate public health threats posed by $PM_{2.5}$.

In redesignating the Cincinnati-Hamilton area from non-attainment to attainment, EPA was required to make specific findings that, among other criteria, the area has not only attained the NAAQS but that such attainment was caused by "permanent and enforceable reductions in

emissions resulting from implementation of the applicable" state and federal regulations "and other permanent and enforceable reductions." 42 U.S.C. § 7407(d)(3)(i), (iii). This is a "stringent criteria[.]" *Am. Trucking Ass'n v. US EPA*, 175 F.3d 1027, 1047 (D.C. Cir. 1999), *rev'd on other grounds sub nom. Whitman v. Am. Trucking Ass'n*, 531 U.S. 457 (2001).

To meet its burden in this case, EPA asserted that reductions in measured $PM_{2.5}$ air pollution in the Cincinnati-Hamilton area were caused by several regional pollution trading programs. One of those was EPA's Cross State Air Pollution Rule (CSAPR). 76 Fed. Reg. at 77,906; 76 Fed. Reg. at 80,256-57. The D.C. Circuit vacated the CSAPR a year ago and, while review of that decision is pending in the Supreme Court, the rule remains vacated in the mean time. *EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7 (D.C. Cir. 2012). In addition to the CSPAR, EPA also relied on several other regional pollution trading schemes to find that the pollution reductions in the Cincinnati area are permanent and enforceable. Those include the Acid Rain program of the Clean Air Act, the NOx SIP Call, and the Clean Air Interstate Rule (CAIR). *See, e.g.*, ECF No. 6111748348 at 24-26.

Respondents base their motion for a stay in this case on the fact that the Supreme Court's review makes the outcome of the *CSAPR regulation* uncertain; but Respondents do not show that the outcome of the Supreme Court's decision makes the outcome of *this case* uncertain. In fact, it does not, for at least two reasons. First, EPA erred by relying on *any* trading programs—which do not require any particular polluter to reduction emissions—to find that emission reductions upwind from Cincinnati were permanent and enforceable. ECF No. 6111748348 at 29 ("even if the Supreme Court overturns [the D.C. Circuit's] vacatur, the CSAPR would still not ensure that the particular air pollution sources upwind from Cincinnati achieve any emission reductions."). It is certainly true that "[t]he legal status and validity of CSAPR… is of central relevance to this case," Mot. at 4, and because the rule is vacated, EPA's basis for redesignating the Cincinnati area is undermined. Yet regardless of the status of the CSAPR, this Court can find EPA's decision erroneous for relying on the other three multi-state pollution trading programs that EPA purported to rely on. Plus, if the Court finds that reliance on multi-state

4

pollution trading program is erroneous as a general matter, the Court's decision will still be relevant to CSPAR even if the Supreme Court reverses the D.C. Circuit's opinion vacating the rule.

Second, setting aside the status of the CSAPR, Sierra Club also challenges EPA's action because EPA failed to ensure that Reasonably Available Control Technology (RACT) limits were in place, as required by the Clean Air Act.  ECF No. 6111748348 at 33-39.  The EPA's failure to require these important pollution reductions is unaffected by the CSAPR litigation.[1]

The delay EPA seeks would provide little benefit.  EPA posits only that a delay would allow the Court to "assess the impact of the Supreme Court's decision" without providing any explanation of how a review of EPA's decision in this case would be assisted.  Mot. at 5.

---

[1] Respondents' motion also asserts that if the Supreme Court "reaches the issue of whether EPA permissibly interpreted the statutory term 'contribute significantly,' its decision has the potential to affect one of the two issues presented in Sierra Club's opening brief" but then goes on to quote an issue that does not reference or relate to the phrase "contribute significantly."  Mot. at 5 ¶ 4.  Respondents' point is unclear.

Meanwhile, delay comes at a significant cost to the public health. Contrary to EPA's assertion that its decision to redesignate the Cincinnati area into attainment "will not result in environmental harm," Mot. at 5, and "does not result in the relaxation of any control measures," *id*. at 6, EPA's redesignation at issue here prevents or delays important public health protections applicable in nonattainment areas from being implemented. 42 U.S.C. § 7513a; *Natural Res. Defense Council v. EPA*, 2013 U.S. App. LEXIS 214 (D.C. Cir., Jan. 4, 2013) (42 U.S.C. §§ 7513-7513b govern nonattainment requirements for $PM_{2.5}$ nonattainment areas); *Wall v. EPA*, 265 F.3d 426, 428 (6th Cir. 2001) ("More stringent air pollution control requirements apply to nonattainment areas than to attainment areas.").

EPA's only basis for asserting that its redesignation of the Cincinnati area does not cause harm to public health is that the area is meeting the 1997 NAAQS. Mot. at 5-6. But EPA's own determination is that the 1997 15 $\mu g/m^3$ standard is insufficient to protect public health belies this claim. 78 Fed. Reg. 3086 (Jan. 15, 2013). That is why EPA revised the NAAQS to 12 $\mu g/m^3$, *id*., which is lower than the monitored data relied on by EPA in

6

the redesignation action at issue here. *See* 76 Fed. Reg. at 77,905, Table 2. In other words, EPA's redesignation at issue here lifted or avoided more stringent pollution controls for $PM_{2.5}$ emissions in an area that does not meet the EPA's 2012 $PM_{2.5}$ air quality standard. *See* ECF 6111748348 at 17-18, 22-23 (setting forth the environmental harms from EPA's unlawful redesignation action). EPA's assurances that human health is not harmed by air pollution above the NAAQS until the EPA gets around to publishing a list of nonattainment areas, Mot. at 7, is baseless. It is the air pollution itself that harms people; EPA's languid pace of designating nonattainment areas is not an antidote to pollution.

Moreover, even if the Cincinnati area were achieving the 2012 NAAQS, that would still not mean that there was no harm done by EPA's action eliminating the more stringent $PM_{2.5}$ pollution control requirements. As one of the Respondents, herself[2], confirmed, EPA's studies show human health risk at pollution concentrations lower than the NAAQS:

---

[2] Ms. McCarthy was confirmed as the EPA Administrator by the Senate on July 18, 2013. She automatically becomes a respondent in this case pursuant to Fed. R. App. P. 43(c)(2).

> Studies demonstrate an association between premature mortality and fine particle pollution at the lowest levels measured in the relevant studies, levels that are significantly below the NAAQS for fine particles. These studies have not observed a level at which premature mortality effects do not occur. The best scientific evidence, confirmed by independent, Congressionally-mandated expert panels, is that there is no threshold level of fine particle pollution below which health risk reductions are not achieved by reduced exposure. Thus, based on specific advice from scientific peer-review, we project benefits from reducing fine particle pollution below the level of the NAAQS and below the lowest levels measured in the studies.

Letter from Gina McCarthy, EPA, to Hon. Fred Upton, U.S. House of Representatives (Feb. 3, 2012)[3]; *see also* 71 Fed. Reg. 2620, 2635 (Jan. 17, 2006) (U.S. EPA unable to find evidence supporting the selection of a threshold level of $PM_{2.5}$ under which the death and disease associated with $PM_{2.5}$ would not occur at the population level); *U.S. v. Cinergy Corp.*, 618 F.Supp.2d 942, 950 (S.D.Ind. 2009) (EPA's expert concluded that for $PM_{2.5}$ the dose-response curve for mortality is linear, meaning there is no safe level), *appeal dismissed on other grounds* 623 F.3d 455 (7th Cir. 2010). Thus, bringing down $PM_{2.5}$ levels in any amount, as the controls sought by this

---

[3] *Available at* http://switchboard.nrdc.org/blogs/jwalke/2-3-12%20EPA%20letter%20to%20Upton%20re%20PM%20benefits.pdf. (last visited July 19, 2013).

case will do, benefits the public health, and eliminating or delaying those controls will harm it.

## Conclusion

Respondents' request for further delay, for some unspecified period of time until the Supreme Court rules in the *EME Homer City* case, serves only to prolong the effect of EPA's unlawful redesignation at issue in this case.  Respondents fail to offer more than vague notions of a benefit from further delay, while failing to recognize the public health consequences from that delay.  This Court rejected Respondents' last attempt to delay this case, ECF 6111676403, and it should similarly reject Respondents' most recent attempt.  A briefing schedule has already been set, Petitioner met its filing deadline, and Respondents should be held to theirs as well.

Respectfully submitted this 19th day of July, 2013.

                                  McGILLIVRAY WESTERBERG & BENDER LLC

                                  <u>s/ David C. Bender</u>
                                  David C. Bender
                                  Christa O. Westerberg
                                  211 S. Paterson Street, Suite 320
                                  Madison, WI 53703
                                  Tel. 608.310.3560
                                  Fax 608.310.3561
                                  Email:    bender@mwbattorneys.com
                                                    westerberg@mwbattorneys.com


                                  Attorneys for Petitioner Sierra Club

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2013, a copy of the foregoing was served electronically through the Court's CM/ECF system on all registered counsel.

   /s/David C. Bender